Good morning, may it please the court, my name is David Schlesinger and I represent the appellant Carlos Lobo. This is a case in which Mr. Lobo was constructively forced to go to trial with counsel with whom he had an irreconcilable conflict. Despite acknowledging twice, admitting twice, the day before trial was about to start during a closed hearing, that he was guilty of having violated... Well, this was his third lawyer, right? It's his second lawyer, Your Honor. The first lawyer was Gregory Murphy of Federal Defenders and Mr. Murphy was substituted out and Mark Carlos is his second defense counsel. Yeah, but this was his third request for another lawyer. I believe it was his second request for another attorney, Your Honor. The first one happened... But he did it on the eve of trial. He did do it on the eve of trial, Your Honor, but he didn't want to go to trial. So when you look at cases such as Dimori and Reyes-Bosquet, the court still, the district court still had to balance the convenience factors against Mr. Lobo's Sixth Amendment right to counsel of his choice, especially... Did he have a Sixth Amendment right to defense of his choice? I mean, the idea that he could relitigate the California conviction in the federal tribunal is not a very good idea, is it? We're not arguing, Your Honor, at this stage that he had a right to a collateral challenge in federal court. However, he might have been able to pursue... I'm sorry, Your Honor. What else could he pursue? He might have been able to pursue post-conviction remedies in State court that could have altered or... A writ of quorum nobis? Not necessarily, Your Honor. There is indication in the original colloquy with Mr. Murphy that there was confusion between Mr. Lobo and his State... Let me ask you this.  Did Mr. Lobo's counsel or Mr. Lobo ever say, make a motion to suspend the prosecution of the federal count so that he might seek post-conviction remedy in the California court and identify what vehicle he would use to do so? They didn't specifically do that, Your Honor. No. But that's in part because there was this irreconcilable conflict that the two had developed. The irreconcilable conflict was that his attorneys were telling him, you can't raise the State post-conviction remedy in the federal charge. And he was saying, that's what I want to raise. That was irreconcilable conflict. He was wrong on the law. His attorneys were right. That's an irreconcilable conflict? Well, I think, Your Honor, if you look at the second closed court colloquy, Mr. Lobo did note to the district court that he was in the process of hiring an attorney in Los Angeles in order to pursue post-conviction remedies. Did he ever say to the court, can we suspend this so I can do that remedy? He didn't explicitly say that, but I think that's a clear implication of what he was trying to do. So the trial court, the federal trial court should have read his mind on that. I think that there was enough in the record, Your Honor, that... Where is it in the record that he says, I would like to pursue my State court post-conviction remedies? He didn't explicitly say that, Your Honor, but then again, he is a layperson. So the notion of a collateral challenge versus a post-conviction remedy is something that you wouldn't expect someone of his limited education and understanding to be able to grasp. I should also note that with regard to this specific issue as to what he might have been able to pursue, he did tell his original attorney... His original attorney, Mr. Murphy, did inform the district judge during the first colloquy that there appeared to be confusion between Mr. Lobo and his State-appointed counsel regarding whether Mr. Lobo had been adequately apprised as to the immigration consequences of pleading guilty to the Section 220A offense during the 2008 proceedings in Superior Court. Well, let's back up. Sure. So what theoretically was his State post-conviction remedy? Theoretically, he might have been able to pursue a challenge under Section 1016.5 of the Penal Code, which is a statutory right of a defendant in California Superior Court to be fully apprised of the immigration consequences of the plea. Of course, now post-pedia, there is a Federal constitutional right to that sort of complete appraisal of the immigration consequences of the plea. Well, what prevented him from pursuing those post-conviction remedies in the State court? There's nothing that fully precludes him from pursuing those remedies, Your Honor. It's simply that we believe that because this is a structural error, that even though he might technically have a parallel remedy in State court, that... Structural error? What? Has the Supreme Court of the United States ever found this to be a structural error? Well, this Court has said that you do not need to demonstrate prejudice if the denial of the right to counsel has been so complete that you effectively don't have counsel when you're proceeding, going to trial. Or in this situation where Mr. Lobo didn't want to go to trial, he ultimately wanted to plead, but he wanted to plead in a way such that he wouldn't have the kind of sensing exposure that he ultimately ended up having. See, that's the problem. If he wanted to plead guilty, he could plead guilty at any time. What he wanted to do was avoid the sentencing implications of having this prior conviction. But in order to do that, he had only a State court remedy. So not getting new counsel didn't really prevent him from pursuing either one of those strategies. It didn't fully prevent him, Your Honor, although in this situation where in the eve of trial he didn't want to go forward, he continued to want to find some way of working it out on the State court level. The District Court should have allowed Mr. Lobo to substitute a new counsel, and then it set forth a fairly tight timeframe for allowing Mr. Lobo to pursue State court remedies. Is that an exception to the Speedy Trial Act? I mean, you know, he's got the Speedy Trial Act hanging over his head. His counsel didn't ask for some kind of a, didn't make any motion that might otherwise suspend it. I'm not aware whether it's a specific exception to the Speedy Trial Act, Your Honor, but I do know that Mr. Lobo was in detention and he was fully prepared to avail himself of all remedies that were available to him, which is why he mentioned during the second closed court colloquy with the District Court that he was hiring, in the process of hiring an attorney in L.A. Let me, let's see, if there aren't any further questions at this point, I'd like to reserve the remainder of my time for rebuttal. Thank you. Thank you. George Manahan for the United States. May it please the Court. Judge Hayes did not abuse his discretion when he decided not to allow Mr. Lobo to get a third attorney on the eve of trial because the motion was untimely. Judge Hayes performed an adequate inquiry and decided that the source of the conflict was Mr. Lobo, as this Court has pointed out numerous times, Mr. Lobo wanted to attack a state conviction. And because Mr. Lobo's reason for wanting a new attorney was, on one hand, a litigation tactic, which this Court has found is not the kind, doesn't raise the kind of conflicts that requires a court to give a new attorney, and was unreasonable. Tellingly, here we are a year later, we haven't heard that anything's happened with the new attorney regarding the state conviction. Let me ask you something. If he does somehow get the state conviction expunged, could he go back into the district court and ask for a resentencing? He could file a 2255 motion at that point. Is there some time limit that's running on that? I believe there, I know for a habeas, there's 2254, there's a year time limit. I think there's the same time limit for 2255, although I'm not 100% on that. So if he were actually actively pursuing... He would have had a year, at the minimum, I believe. Okay. But a year after his California conviction were expunged... I actually believe it would be a year after his appeal in the federal court ended, so I think he still has time. Right. He still can pursue. That's why I'm trying to ascertain what if any prejudice or harm. I mean, if he were pursuing the state court avenue of relief diligently, he should, we're still on appeal. I mean, he should be able... I think he would still have a 2255 action in the federal court for a new sentence, if he was able to get a new state conviction. And tellingly, with regards to whether Judge Hayes should have ascertained that what Mr. Lobo really wanted was time to fight his state conviction, Judge Hayes was told by two defense attorneys that there was no motion to file in federal court regarding the state conviction. Mr. Murphy said it. It's on page 73, line 1 of the record from a defendant's record. And then Mr. Carlos said the same thing. There's no motion that can be filed on page 19, lines 15 and 16 of the defendant's record. And I just, with regard to whether he even has a state conviction, I mean, any hope of doing anything with a state conviction, defense appellant counsel raised the possibility. Well, maybe he wasn't told the immigration consequences. But on page 11 of the United States record, the state court judge clearly told him, if you are not a citizen, you are hereby advised the conviction of the offense for which you have been charged will have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization. I thought it was slightly, his argument was slightly different, that he was forced into pleading guilty to something that he didn't do. Well, he may have mentioned multiple possible attacks on a state conviction, but one of them that was clearly raised just a few minutes ago at oral argument was the Padilla, and then I don't know the state law as well as appellant counsel, but the Padilla-like state attack on the conviction, I think. Certainly under Padilla v. Kentucky, he wouldn't be able to, he wasn't prejudiced by any. He also claimed that his public defender in the state conviction had coerced him to accept a plea as to a crime which he had not committed. So that was a different ground. That is a different ground, although, you know, both federal defense attorneys, they both saw the plea colloquy. Mr. Carlos said he did some investigation. He called up the public defender. He was dubious of whether that was true or not, whether he was coerced into doing it. But the bottom line is, he said, there's no motion. There's nothing there. I looked into it. There's nothing to be done. That's what both federal defense counsels. Right. But had Mr. Carlos or the predecessor, Mr. Murphy, had they investigated, as members of the California Bar, which they undoubtedly were, whether there was any remedy at California law? And Mr. Murphy specifically said, there's no, he said on page 73, I think there are some challenges that could be made to the state conviction, but none that would affect these federal proceedings. Well, is that correct? If the challenges were successful and the conviction were expunged, wouldn't that affect the federal proceedings? Well, for instance, sometimes what, you know, defense try to do is they try to go back and they try to change the sentence at state court. I think that's the kind of thing that Mr. Murphy may have been thinking about. But if the conviction were expunged. If it were, if it were expunged, that would affect the sentence. Wasn't Mr. Murphy incorrect in saying that? I think the only logical implication what Mr. Murphy was saying is there's no way to expunge it. But there may be other things to do with that state conviction, but they're not going to help in federal court. Well, essentially he would have been convicted at 1326. I mean, essentially admitted he was guilty of 1326. The only question is whether he got the 16-level enhancement. That's correct, Your Honor. And that's what this is all about. And Mr. Lobo said that himself. I don't have the exact line, but I know at some point he said, you know, one of the first things he says, either with Mr. Murphy or Mr. Lobo, is I don't like the sentence I'm facing. I know I'm guilty, but I don't, you know, I want to do something about the state conviction because I don't like the sentence that I'm going to get. You know, the court was not required. And certainly, I mean, I think the implication is even if Mr. Lobo had said, I want to stop my federal proceedings and attack, Mr. Lobo never said that. I've seen other defendants say that in Southern District, California. The district courts are not very happy to do that. They want to move their case along. This was his defendant's first time illegal reentry. It was. And he was sentenced to 70 months. Seventy months, that's correct. Now, it appears to me that an argument could be made that 70 months for a first-time offender is an unreasonably lengthy term of imprisonment. Well, first of all, it was within the advisory guideline range. And Judge Hayes, I think. Well, the advisory guideline range is not, you know, they're just there to look at and they're unconstitutional to begin with. I don't believe any court has found the guideline range unconstitutional, but I do believe that it's advisory. No, they found the guidelines unconstitutional. Oh, certainly. Yeah, so the guidelines were unconstitutional. Certainly. And we had a problem with the range. A mandatory guideline was found to be unconstitutional, yes, Your Honor. I believe that Judge Hayes went painfully through all the 3553A factors. And in this case, I believe the two things that were mainly focused on was defendant's conduct while he was in the United States and the need to protect the public from further conduct. And the crime he was committed of wasn't a 25-, 30-year-old crime. I'm forgetting the case where we said, oh, there's one old case, maybe you shouldn't worry about the guidelines so much. But this is a really heinous crime. It was not his only law enforcement conduct. He had other convictions. He had other really bad arrests that didn't lead to conviction. I was in criminal history category four. That's correct, Your Honor. Which is high. It is. You do have the pre-sentence report. So you'll be able to see just what, I mean, without getting into any details, Judge Hayes mentioned the fact that not only the rape-type conviction he had, but in some of his other convictions he punched his wife in the face twice. There were some ugly aspects to Mr. Lobo's criminal record. On top of that, there was the need for a strong deterrence message. I mean, Mr. Lobo, even at sentencing, kept basically saying, look, all my incentives are to keep coming back to the United States even after you sentence me. So Judge Hayes had to do a sentence that would both specifically deter Mr. Lobo from re-entering the United States and to generally deter people with similar heinous criminal records. So I do believe the 70-month sentence was justified under the 3,503 effects. How many people do you think were deterred? How many? How many were deterred by this sentence? I have no way of speculating as to how, but I do believe that in general the message does get out in countries other than the United States, hey, if you've got a bad criminal record and you come back, they don't take it easy on you. You're going to have to face a significant criminal history, and that's a reason to think twice about illegally entering the United States. You're just speculating. I think what I'm doing is using general law and economics type thinking about the reasoning for sentencing decisions. But, yes, to some degree it is speculation. Did you go to the University of Chicago? I did not. If there are no further questions, I think my time is running out anyway. I'll submit. Oh, yeah. Okay. Thank you. Let me briefly address a couple of points that came up in response to, I believe, questions from Judges Wardlaw and Judge Bea. Let me read to you the specific discussion that Mr. Murphy had during the first closed court colloquy. He said on page ER72, it does, in fact, appear that Mr. Lugar was surprised at the possibility of deportation when it came up, that there was that perhaps a public defender had an off-the-record conversation with him that may support what he is saying regarding not having been fully apprised of the immigration consequences of his plea. Despite what Mr. Mann had said about the official court record and the official plea colloquy, there is at least some ambiguity as to exactly what was said to Mr. Lobo by his state-appointed counsel regarding the immigration consequences. There wasn't any question about what he was told by the judge prior to sentencing. At least not from what we have in the record, Your Honor. But Mr. Carlos – I mean, there's a liturgy which state court judges read in every one of these cases. That's correct, Your Honor. Though I should note that Mr. Carlos at the second closed court colloquy stated, I also contacted the public defender up in L.A. for their files and I haven't received them yet. He also then stated that he checked up on the public defender there, but he didn't actually have any conversation with the public defender or actually review the file. So there is some ambiguity in the record regarding whether either of Mr. Lobo's counsel completely conducted an adequate inquiry into the kinds of post-conviction remedies that might have been available to him. I should also note that Mr. Murphy said on page 73, ER 73, I have no – I do not practice in state court ordinarily. I think he's primarily preoccupied with one that accounts for the great majority of his time worthy to be sentenced here. So, again, this is an indication at a very early stage in the case that Mr. Lobo was preoccupied with the sentencing consequences from the 2008 conviction and he therefore wanted to do something about it. Let me quickly, in my very few remaining seconds, address what Judge Pregerson was questioning about regarding the reasonableness of the sentence. I think that, as we mentioned in our briefing, there seems to be some suggestion in – and may I finish the sentence before I conclude with the panel's indulgence? There may have been some ambiguity in the sentencing proceeding as to whether the district court was sentencing Mr. Lobo in response to the state court having only given him a total of one year imprisonment for all of the various offenses to which he had pleaded guilty. So, I think that bolsters some of what Judge Pregerson was suggesting and that the sentence may have been unreasonable given that this was Mr. Lobo's first immigration offense and he seemed to have been sentenced primarily based on a perception that his state court record was bad even though he had only served a year of actual imprisonment. If there are no further questions. All right. Thank you. This matter is now submitted. And now we'll come to the next item, which is United States v. Pat Warden.
judges: Pregerson, Wardlaw, Bea